UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSE CARDONA,

               Plaintiff,                                  Hon. Ellen S.   Carmody

v.

                                                    Case No. 1:16-cv-1013

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.   The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.   The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.   For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.   Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation

omitted).   This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.   *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 45 years of age on his alleged disability onset date.   (PageID.213). He possesses an eighth grade education and previously worked as a production machine tender, press operator, merchandise deliverer, fabricator/assembler, and maintenance mechanic. (PageID.53, 281).   Plaintiff applied for benefits on May 28, 2013, alleging that he had been disabled since January 22, 2013, due to bi-polar disorder, depression, anxiety, ADHD, asthma, bronchitis, pneumonia, mood disorder, insomnia, and an ulcer.   (PageID.213-22, 280). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).   (PageID.105-211).

On December 2, 2014, Plaintiff appeared before ALJ Michael Condon with testimony being offered by Plaintiff and a vocational expert.   (PageID.61-102).   In a written decision dated February 13, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.40-55).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.   (PageID.30-35).   Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On January 14, 2011, Plaintiff participated in a stress echocardiogram examination, the results of which were "normal" and "without evidence for provokable myocardial ischemia." (PageID.466-68).

On December 5, 2011, Plaintiff was admitted to Forest View Hospital after he overdosed on medication. (PageID.426). Plaintiff reported that he was experiencing "depression and marital conflict." (PageID.426). Plaintiff was treated with medication and counseling. (PageID.424-55). Plaintiff was discharged on December 20, 2011, at which point he was in "improved condition" and his "moods were more stable." (PageID.426-28). Plaintiff was diagnosed with: (1) major depression disorder, recurrent, in remission; (2) alcohol abuse; and (3) ADHD. (PageID.428). Plaintiff's GAF score was rated as 70.[1] (PageID.428). Plaintiff was instructed to take his medication and participate in counseling. (PageID.428). No functional limitations were imposed on Plaintiff that were inconsistent with the ALJ's RFC.

On September 19, 2013, Plaintiff participated in a consultive examination conducted by Cynthia Raven, MA, LLP. (PageID.483-87). Plaintiff reported that he watches television, drives, shops, prepares meals, "shares the household chores," and also visits with a friend 3-4 times weekly. (PageID.485). The results of a mental status examination were unremarkable. (PageID.485-87). Plaintiff was diagnosed with: (1) bipolar I disorder; (2) panic disorder without agoraphobia; (3) ADHD; and (4) alcohol dependence in sustained partial

---

1   The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 70 indicates "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

remission.   (PageID.487).   Plaintiff's GAF score was rated as 54.[2]   (PageID.487).

On October 21, 2013, Plaintiff participated in a consultive examination conducted by Dr. R. Scott Lazzara.   (PageID.488-90).   Plaintiff reported that he goes for walks, drives, cleans his kitchen, and watches television.   (PageID.488).   Plaintiff also reported that he can stand for 2 hours and lift 30 pounds.   (PageID.488).   A physical examination revealed the following:

> MUSCULOSKELETAL:   There is no evidence of joint laxity, crepitance, or effusion.   Grip strength remains intact.   Dexterity is unimpaired.   The patient could pick up a coin, button clothing and open a door.   The patient had no difficulty getting on and off the examination table, no difficulty heel and toe walking, no difficulty squatting, and no difficulty hopping.   Straight leg raising is negative.
>
> NEURO:   Cranial nerves are intact.   Motor strength is normal.   Tone is normal.   Sensory is intact to light touch and pinprick.   Reflexes are intact and symmetrical.   The patient walks with a normal gait without the use of an assist device.

(PageID.489).

On June 7, 2014, Plaintiff was hospitalized after experiencing depression, anxiety, and suicidal thoughts following the death of his best friend.   (PageID.492-660).   The following day, Plaintiff tested positive for cocaine and benzodiazepine.   (PageID.506).   Plaintiff was treated with medication and counseling.   (PageID.492-660).   Plaintiff was discharged on June 17, 2014, at which point he was not experiencing any suicidal thoughts and his depression and anxiety each rated 2 on a 1-10 scale.   (PageID.492, 536).   Plaintiff experienced an immediate relapse and was hospitalized on June 21, 2014.   (PageID.662).   Plaintiff was treated with medication and counseling.   (PageID.662-831).   Plaintiff was discharged on June 30, 2014.

---

2  A GAF score of 54 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning."   DSM-IV at 34.

(PageID.662).   No functional limitations were imposed on Plaintiff that were inconsistent with the ALJ's RFC.

On July 7, 2014, Plaintiff began treating with Douglass Judson, LMSW. (PageID.891-95).   Plaintiff was diagnosed with: (1) bipolar disorder; (2) generalized anxiety disorder; and (3) alcohol dependence.   (PageID.894).   Plaintiff's GAF score was rated as 60.[3] (PageID.894).   Treatment notes dated July 21, 2014, indicate that Plaintiff's GAF score was 62.[4] (PageID.910).   Treatment notes dated July 28, 2014, indicate that Plaintiff was in "good spirits." (PageID.955). Treatment notes dated August 4, 2014, indicate that Plaintiff's medications were providing "positive results."   (PageID914). Treatment notes dated August 19, 2014, indicate that Plaintiff was making "good progress."   (PageID.973).   Plaintiff's GAF score was rated as 62. (PageID.978).   Treatment notes dated September 15, 2014, indicate that Plaintiff was "doing well."   (PageID.988).   Plaintiff's GAF score was rated as 62.   (PageID.991).


## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.   *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5]   If the Commissioner can

---

3  A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

4  A GAF score of 62 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships."   *Id.* at 34.

5  1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) asthma; (2) status post-cervical fusion surgery at C5-6; (3) fractured clavicle; (4) attention deficit hyperactivity disorder (ADHD); (5) bipolar I disorder; (6) generalized anxiety disorder; and (7) major depressive disorder, severe

---

requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (PageID.42-45).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform medium work subject to the following limitations: (1) during an 8-hour workday, he can stand/walk and sit for six hours each; (2) he can frequently climb, balance, stoop, kneel, crouch, and crawl; (3) he can have no contact with the general public and only occasional contact with co-workers and supervisors; (4) he can have only occasional exposure to temperature extremes, humidity, fumes, odors, dusts, gases, areas of poor ventilation, and chemicals; (5) he is limited to simple, routine work that is performed in a low-stress work environment with no production quotas; and (6) he is limited to making only simple work-related decisions.  (PageID.45-46).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there

exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 400,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.88-95). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert further testified that if Plaintiff were limited to sedentary work, there still existed approximately 43,000 jobs in the national economy which Plaintiff could perform consistent with his RFC. (PageID.95-96). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.


I.          **The ALJ Properly Evaluated the Opinion Evidence**

Several of Plaintiff's care providers expressed opinions or completed form reports regarding Plaintiff's ability to function. Plaintiff argues that he is entitled to relief on the ground that the ALJ failed to accord these opinions sufficient weight and also failed to provide a sufficient basis for discounting such.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the

opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

As is well recognized, the treating physician doctrine "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). When assessing whether an opinion from a care provider is entitled to deference, the question is not whether the care provider later established a "treating physician" relationship with the claimant, but instead whether such relationship existed as of the date the opinion in question was rendered. As the Sixth Circuit has observed:

> But the relevant inquiry is not whether [the doctor] might have become a treating physician in the future if [the claimant] had visited him again. The question is whether [the doctor] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*."

*Id.*

Accordingly, "a single visit [to a care provider] does not constitute an ongoing treatment relationship." *Id.* Moreover, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07. The requirement that the ALJ provide good reasons when affording less than controlling weight to a care provider's opinion applies only where the care provider qualifies as a "treating physician." *See, e.g., Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 378 F.3d at 545, *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007).

A. Dr. Scott Duemler

On March 4, 2013, Dr. Duemler completed a form report regarding Plaintiff's ability to perform physical work-related activities. (PageID.475-78). With respect to the following areas, the doctor reported that Plaintiff's ability to function was not affected: (1) lifting/carrying; (2) standing and/or walking; (3) sitting; and (4) pushing and/or pulling. (PageID.475-76). Dr. Duemler reported that Plaintiff did not experience any manipulative or visual/communicative limitations. (PageID.477). With respect to Plaintiff's ability to concentrate and pay attention, the doctor declined to indicate the extent to which, if at all, Plaintiff was limited. (PageID.477). The doctor also reported, however, that Plaintiff can "never" kneel, crouch, crawl, or stoop. (PageID.476). The doctor also reported that Plaintiff "misses too much work" due to his impairments. (PageID.478).

With the exception of these latter two assertions, Dr. Duemler's opinion is consistent with the ALJ's RFC assessment. The ALJ, however, found that Plaintiff can frequently

kneel, crouch, crawl, and stoop. (PageID.45). The ALJ also rejected the idea that Plaintiff was unable to work due to excessive absenteeism. Plaintiff argues that the ALJ was obligated to afford controlling weight to Dr. Duemler's opinion or articulate good reasons for his failure to do so.

The Court can locate nothing in the record indicating that Dr. Duemler ever examined or treated Plaintiff prior to March 4, 2013. Likewise, Plaintiff has identified no such evidence. Because Dr. Duemler was not properly considered a treating physician as of the date he completed the aforementioned report, the ALJ was not required to articulate a good reason for failing to afford controlling weight to such. However, even if Dr. Duemler were considered a treating physician, the result is the same. The opinion that Plaintiff can *never* kneel, crouch, crawl, or stoop enjoys no support in the record. Dr. Duemler failed to articulate the basis for this particular opinion and there is nothing in the medical record supporting this opinion. Moreover, as previously noted, a physical examination conducted later that year revealed the following:

> MUSCULOSKELETAL: There is no evidence of joint laxity, crepitance, or effusion. Grip strength remains intact. Dexterity is unimpaired. The patient could pick up a coin, button clothing and open a door. The patient had no difficulty getting on and off the examination table, no difficulty heel and toe walking, no difficulty squatting, and no difficulty hopping. Straight leg raising is negative.

> NEURO: Cranial nerves are intact. Motor strength is normal. Tone is normal. Sensory is intact to light touch and pinprick. Reflexes are intact and symmetrical. The patient walks with a normal gait without the use of an assist device.

(PageID.489).

As for Dr. Duemler's observation that Plaintiff "misses too much work," such does not constitute a medical opinion. A "medical opinion" is a statement which articulates what an individual is still capable of doing despite their impairments. *See, e.g., Ferguson v. Commissioner of Social Security*, 628 F.3d 269, 272 (6th Cir. 2010); 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2).

The statement in question is nothing more than a conclusory statement that Plaintiff is unable to work. However, whether Plaintiff is capable of working is a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). The ALJ discounted Dr. Duemler's opinions on the ground that such were not supported by the medical evidence, a determination supported by substantial evidence.

### B. Dr. Tariq Faridi

On March 16, 2013, Dr. Faridi completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (PageID.479-81). Plaintiff's abilities were characterized as "markedly limited" in all 20 categories. (PageID.479-80). The doctor also reported that Plaintiff is "unable to concentrate, understand and perform any work [at] this time." (PageID.481). The ALJ gave this opinion "no weight" on the ground that such was inconsistent with the evidence and, furthermore, because "opinion[s] regarding a claimant's ability to work is reserved to the Commissioner of the Social Security Administration." (PageID.52).

Again, the Court can locate nothing in the record indicating that Dr. Faridi treated Plaintiff prior to March 16, 2013. Plaintiff asserts that he began treating with Dr. Faridi following his 2011 hospitalization, but Plaintiff has failed to identify where in the record evidence of such is located. (PageID.1014). Because Dr. Faridi was not properly considered a treating physician as of the date he completed the report in question, the ALJ was not required to articulate a good reason for failing to afford controlling weight to such. However, even if Dr. Faridi were

14

considered a treating physician, the result is the same.

First, the form that Dr. Faridi completed does not constitute a "medical opinion," as such fails to articulate any meaningful description of what Plaintiff can allegedly do despite his impairments. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see also*, *Ashley v. Commissioner of Social Security*, 2014 WL 1052357 at *7-8 (W.D. Mich., Mar. 19, 2014) (where "check-box forms" are unaccompanied by explanation, treatment notes, or other evidence, ALJ properly rejected such). As the ALJ also concluded, the assessment in question is not supported by the evidence. (PageID.52). Finally, as the ALJ also noted, Dr. Faridi's opinion that Plaintiff is unable to work concerns a matter reserved to the Commissioner. Accordingly, the Court concludes that the ALJ's decision to discount Dr. Faridi's opinion is supported by substantial evidence.

C.  Dr. Mazhar Munir and Dr. Gary Balian

Plaintiff asserts that the ALJ improperly "discredited the medical opinions of Dr. Munir" and "discredited" Dr. Balian's "opinions and GAF score." (PageID.1021-22). However, there is no indication that Dr. Munir or Dr. Balian ever expressed a medical opinion regarding Plaintiff's ability to function despite his impairments. Plaintiff has failed to identify any such opinion and the existence of any such opinion is not apparent from the ALJ's decision. Instead, Plaintiff and the ALJ both make reference to treatment notes in which Dr. Munir and Dr. Balian

report Plaintiff's GAF score as 50. (PageID.52, 834-38, 1021-22). However, a GAF score is not a medical opinion. *See, e.g., Edwards v. Commissioner of Social Security*, 654 F.Supp.2d 692, 703 (W.D. Mich. 2009); *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir., Feb. 9, 2006) (the ALJ is not required "to put stock in a GAF score in the first place"). Accordingly, these argument are rejected.

### D. Mr. Douglass Judson

On October 13, 2014, Mr. Judson completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (PageID.1004-06). Plaintiff's abilities were characterized as "markedly limited" in 14 categories and "moderately limited" in 6 categories. (PageID.1004-05). Mr. Judson also reported that Plaintiff experiences "significant interference with his ability to function independently, safely; as well as maintain support relationships." (PageID.1006).

The ALJ discounted Mr. Judson's opinion on two grounds. The ALJ first noted that the assertion that Plaintiff experiences "significant interference with his ability to function independently, safely; as well as maintain support relationships" is "not a clear definition of what [Plaintiff] can and cannot mentally do." (PageID.52). The ALJ also found that Mr. Judson's responses were inconsistent with his contemporaneous treatment notes which, as noted above, indicated that Plaintiff was making progress and experiencing only moderate or mild symptoms. (PageID.52). The ALJ's rationale is supported by substantial evidence. Furthermore, because Mr. Judson is not an acceptable medical source his opinion is entitled to no deference. *See, e.g.,*

*Miller v. Commissioner of Social Security*, 811 F.3d 825, 838 n.9 (6th Cir. 2016) ("even a licensed clinical social worker is not an acceptable medical source"). Accordingly, this argument is rejected.

II.         **The ALJ's Credibility Assessment is Supported by Substantial Evidence**

At the administrative hearing, Plaintiff testified that he was far more limited than the ALJ determined in his RFC assessment. For example, Plaintiff testified that he was "lucky" if he could lift five pounds. (PageID.74). Plaintiff reported that due to his asthma if he walks even "half a block" he has to rest for 30 minutes before he can resume activity. (PageID.82). Plaintiff testified that he experiences 2-3 panic attacks weekly and thinks about committing suicide "every day." (PageID.84-86). The ALJ found that Plaintiff was "not entirely credible" and, accordingly, discounted his subjective allegations. (PageID.48-50). Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has

established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence,

it must stand.   The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding

that should not be lightly disregarded.   *See Varley v. Sec'y of Health and Human Services*, 820

F.2d 777, 780 (6th Cir. 1987).   As the Sixth Circuit has stated, "[w]e have held that an

administrative law judge's credibility findings are virtually unchallengeable."   *Ritchie v.*

*Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation

omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based

upon "an intangible or intuitive notion about an individual's credibility."   *Rogers v. Commissioner*

*of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007).   Instead, the ALJ's rationale for discrediting

a claimant's testimony "must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons

for that weight."   *Id.* at 248.   Accordingly, "blanket assertions that the claimant is not believable

will not pass muster, nor will explanations as to credibility which are not consistent with the entire

record and the weight of the relevant evidence."   *Id.*

Plaintiff argues that the ALJ improperly "focuses primarily on what daily activities

that [he] was able to perform."   (ECF No. 14 at PageID.1025).   Specifically, Plaintiff takes issue

with the following portion of the ALJ's decision:

> In activities of daily living, the claimant has mild restriction.   The
> claimant was able to perform all personal care without difficulty.
> He shopped for two-three hours, one time a week for quick fix meals
> and microwave dinners.   He prepared simple meals such as
> sandwiches, soup, and frozen dinners.   He cleaned the apartment
> (including vacuuming, washing dishes, and doing laundry) for four
> hours every three days.   He could not do lawn work while it was
> hot and humid.   He went out unassisted twice a day, every day.   He
> walked or drove, attended church, and went to appointments.   The
> claimant watched television.   He ordered take-out food.

(PageID.44).

Plaintiff does not dispute the accuracy of the ALJ's observations, but instead argues that "[t]he activities cited above by the ALJ in his decision are those of everyday activities not 'daily activities' and do not constitute substantial evidence that Plaintiff had the capacity to function in substantial gainful activity." (ECF No. 14 at PageID.1026). Plaintiff's argument fails for multiple reasons.

First, the activities described by the ALJ, the accuracy of which Plaintiff does not dispute, are not consistent with Plaintiff's testimony that he must rest for 30 minutes after walking only one-block, that he is "lucky" if he can lift even five pounds, and that he suffers debilitating emotional symptoms on an almost daily basis. Thus, the ALJ's citation to these activities as support for his decision to discount Plaintiff's testimony is appropriate and supported by substantial evidence.

Second, contrary to Plaintiff's argument, the ALJ did not rely merely on Plaintiff's daily activities as a basis to discount Plaintiff's testimony. The ALJ also relied on evidence, undisputed by Plaintiff, that Plaintiff collected unemployment benefits during the time he alleged he was disabled. (PageID.49). While the Court recognizes from a practical standpoint why Plaintiff would simultaneously seek to recover benefits from two distinct programs, the fact remains that courts have consistently held that receipt of unemployment benefits is inconsistent with a claim of disability and, moreover, constitutes a valid rationale for rejecting a claimant's subjective allegations. *See, e.g., Bastian v. Commissioner of Social Security*, 2014 WL 5073606 at *9 (W.D. Mich., Oct. 3, 2014) (collecting cases). Thus, the ALJ did not err by mentioning Plaintiff's receipt of unemployment benefits.

20

The ALJ also noted that Plaintiff's allegations of extreme physical limitation are inconsistent with the medical evidence, including Plaintiff's own statements. (PageID.49-50). This observation is supported by substantial evidence. Finally, the ALJ noted that Dr. Balian questioned Plaintiff's credibility. (PageID.50). The doctor noted that Plaintiff "exaggerated" matters and also denied abusing drugs and alcohol despite testing positive for cocaine and being treated several times for drug and alcohol abuse. (PageID.832-35). In sum, the ALJ's reasons for discounting Plaintiff's subjective allegations are supported by substantial evidence.

## **<u>CONCLUSION</u>**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: September 21, 2017                     /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge